**Carolee LAIRD**

v.

**REDWOOD TRUST LLC, et al.**

**No. CIV. JFM–02–0481.**

United States District Court,
D. Maryland.

Jan. 8, 2003.

Andrew D. Levy, Shelly Marie Martin, Brown Goldstein and Levy, LLP, Baltimore, MD, for plaintiff.

Peter A. Prevas, Prevas and Prevas, Baltimore, MD, for defendants.

### MEMORANDUM

MOTZ, District Judge.

Carolee Laird brings suit against Redwood Trust LLC ("Redwood Trust") and 200 East Redwood Street LLC ("200 East Redwood").  Plaintiff alleges that defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq,* by failing to install an elevator at the Redwood Trust night club ("the Club").[1]

1.  In her complaint, plaintiff alleges other violations of the ADA. In their motion for summary judgment, defendants state that they do not contest plaintiff's non-elevator claims. According to defendants, the non-elevator

Plaintiff asks for an injunction ordering defendants to install an elevator at the Club. The facts are undisputed, and both parties have moved for summary judgment. For the reasons detailed below, I will grant defendants' motion for summary judgment.

## I.

The building in which the Club is located was originally the headquarters of the Mercantile Safe Deposit and Trust Company. In 2001, 200 East Redwood purchased the building and conducted extensive renovations to the building's interior to turn it into a nightclub and sushi bar. Although contemplated in the original plans, an elevator was never installed at the Club.[2] In November 2001, Redwood Trust opened the Club for business.

The Club has three levels—a basement, a ground floor with a large dance floor and sushi bar, and a third level. The critical issue in this case is whether the third level is a mezzanine. That level has a large opening in the middle of the floor that allows patrons to watch the dance floor below. The south side of the third level has a DJ booth that overlooks the dance floor. The north side of the third level has a bar and a narrow walkway. The walkway connects two lounge areas that make up the east and west sides of the third level. The northwest corner of the third level contains an office, a men's restroom, and a staircase. The northeast corner of the third level contains a storage room, a women's restroom, and a second staircase. The third level is open for overflow business and private parties.

Plaintiff suffers from spina bifida and uses a wheelchair. On December 15, 2001, she visited the Club. Once inside, she could not access the Club's basement or third level because the Club does not have an elevator. In February 2002, she filed suit in this court, seeking an injunction that would order defendants to install an elevator at the Club.

## II.

The ADA prohibits discrimination against individuals with disabilities in places of public accommodation.[3] 42 U.S.C. § 12182(a). Discrimination includes the failure to install elevators in certain new constructions and alterations. See id. § 12183(a). Elevators are not required, however, in buildings that are less than three stories or have less than 3,000 square feet per story. Id. § 12183(b). Each story of the Club has more than 3,000 square feet. As a result, the Club must install an elevator if it is a three-story building.

28 C.F.R. pt. 36, app. A § 3.5 defines "story" as follows:

> That portion of a building included between the upper surface of a floor and upper surface of the floor or roof next above. If such portion of a building does not include occupiable space, it is not considered a story for purposes of these guidelines. There may be more than one floor level within a story as in the case of a mezzanine or mezzanines.

It is undisputed that the basement and ground floors of the Club are separate "stories." Thus, the Club has at least two

---

claims have been settled. (Def. Mem. at 3–4.) Plaintiff has not averred to the contrary in her response.

2. Defendants did not install an elevator due to cost and space considerations as well as advice from their architectural firm that the ADA did not require an elevator. The archi-

tectural firm apparently contacted the Department of Justice ADA hotline and was told that the Club did not need an elevator.

3. Defendants concede that the Club is a place of public accommodation subject to the requirements of Title III of the ADA.

stories. Plaintiff contends that the third level of the Club is also a "story," while defendants contend that the third level is a "mezzanine."

28 C.F.R. pt. 36, app. A § 3.5 defines "mezzanine" as "[t]hat portion of a story which is an intermediate floor level placed within the story and having occupiable space above and below its floor." This definition is imprecise and consequently difficult to apply to the facts of this case. Secondary sources offer little aid in clarifying what is and what is not a "mezzanine." I am aware of no cases or other C.F.R. provisions further defining "mezzanine," and the Justice Department's *ADA Title III Technical Assistance Manual* does not address this issue.

In my view, determining whether a floor is a "mezzanine" or a "story" under the ADA requires a pragmatic examination of the floor's functional space and the services provided on the floor.[4] If the floor has relatively little functional space in comparison with the floor below and offers the same services as the floor below, it is likely that it is a "mezzanine." Conversely, if the floor has close to the same amount of functional space as the floor below and offers different services than the floor below, it is likely that it is a

separate "story." In other words, when a floor offers a unique social experience or opportunity due to its functional space or services, it should be considered a separate "story." This test appropriately implements the ADA's goal of guaranteeing individuals with disabilities access to places of public accommodation so that they may participate in mainstream American social life. *See* 42 U.S.C. § 12101; *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 675, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001).

The Club's third level has approximately 5000 square feet. (Redwood Trust Blueprints, Pl.Ex. 13.) The ground floor of the Club is approximately 6500 square feet in size. (*See id.*) Thus, the third level is approximately 75% of the size of the ground floor and approximately 43% of the combined floor space of the two. This size ratio, however, does not tell the whole story. The functional space on the third level is severely restricted. First, there is a 1500 square foot opening in the middle of the floor. The opening restricts the floor's social utility by dividing it into two smaller areas that are connected by a narrow walkway. (*Id.; see also* Baltimore Sun Photograph, Def. Ex. 1; Sushi Bar Photograph, Def. Ex. 2.) Moreover, as I read the

---

**4.** Plaintiff contends that the Club's third level cannot be a mezzanine because it is not between two other floors. (Pl. Mem. at 9.) I find that contention to be unpersuasive. Plaintiff apparently reads the word "its" in the prepositional phrase "below its floor" as referring to the word "story." I read it as referring to the phrase "an intermediate floor level placed within the story." This reading comports with the common understanding that there is "occupiable space" above and below the floor of a mezzanine. Moreover, under plaintiff's reading a mezzanine could never be located on the top floor of any building. There is no sound reason, in law or in policy, why that should be so.

I note that my general reading of the term "mezzanine" is consistent with the definition given by the Building Officials & Code Admin-

istrators International, Inc. ("BOCA"): "An intermediate level or levels between the floor and ceiling of any story with an aggregate floor area of not more than one-third of the area of the room in which the level or levels are located." BOCA, *The BOCA National Building Code* § 502.1 (1999). At the same time, I am conscious of the fact that the third level of the Redwood Trust would not be considered a mezzanine under the BOCA definition because it constitutes more than "one-third of the area of the room in which the level or levels are located." However, *The BOCA National Building Code* and the federal regulations interpreting the ADA serve different purposes, and I believe that the "pragmatic" approach I am taking yields the fairest and most sensible solution under the ADA.

blueprints plaintiff has provided, approximately one-third of the third level is occupied by an office, two bathrooms, a bar, a storage room, and two staircases. (*See* Redwood Trust Blueprints, Pl.Ex. 13.) These physical attributes further restrict the third level's functional space. Thus, the third level has relatively little functional space when compared to the floor below.

Nicholas Piscatelli, the managing member of 200 East Redwood and Redwood Trust and the full-time manager of the Club, has described the Club's services as follows:

> The sushi bar is located on the first floor, there are bars for the purchase of alcoholic beverages on the first floor and mezzanine level. There is various seating throughout the premises including seating at bars and counters on the first floor and mezzanine level, and seating with upholstered chairs with coffee tables and end tables on the first floor, mezzanine level and basement level. The basement and mezzanine levels are open for overflow business or for private parties. There are no uses on the mezzanine level or basement that are not otherwise provided on the first floor. On occasion there is a second DJ providing entertainment in the basement. At other times, music from the first floor and mezzanine are played in the basement.

(Piscatelli Aff., Def. Ex., ¶ 8.) Mr. Piscatelli's description suggests that the third level does not offer unique services. It seems that the third level is only open for limited purposes, and all services available on the third level are also available on the ground floor.

Based on the third level's limited functional space and the fact that it does not offer unique services, I find that the Club's third level is a "mezzanine." As a result, I will grant defendants' motion for summary judgment.

A separate order granting defendant's motion is being entered herewith.

## ORDER

For the reasons stated in the accompanying memorandum, it is, this 8th day of January 2003,

ORDERED that

1. Plaintiff's motion for summary judgment is denied;

2. Defendants' motion for summary judgment is granted;

3. Judgment is entered in favor of defendant; and

4. This case is closed.