# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

CAROLEE LAIRD,

*Plaintiff-Appellant,*

v.

REDWOOD TRUST LLC; 200 EAST
REDWOOD STREET LLC,

*Defendants-Appellees.*

No. 03-2005

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CA-02-481-JFM)

Argued: February 26, 2004

Decided: December 21, 2004

Before WIDENER, SHEDD, and DUNCAN, Circuit Judges.

---

Affirmed by published opinion. Judge Widener wrote the majority
opinion. Judge Shedd wrote a concurring opinion, and Judge Duncan
wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Andrew David Levy, BROWN, GOLDSTEIN & LEVY,
L.L.P., Baltimore, Maryland, for Appellant. Peter Alexander Prevas,
PREVAS & PREVAS, Baltimore, Maryland, for Appellees. **ON
BRIEF:** Shelly Marie Martin, BROWN, GOLDSTEIN & LEVY,
L.L.P., Baltimore, Maryland, for Appellant.

**OPINION**

WIDENER, Circuit Judge:

Plaintiff Carolee Laird brought this action in the United States District Court for the District of Maryland against Redwood Trust, LLC and 200 East Redwood Street, LLC (Redwood Trust). Laird alleged that Redwood Trust violated the Americans with Disabilities Act (ADA) by failing to install an elevator in a nightclub it owned and operated. The district court granted summary judgment for Redwood Trust, and Laird appealed. For the reasons stated, we affirm the judgment of the district court.

I.

The building at issue was originally the headquarters of the Mercantile Safe Deposit and Trust Company of Baltimore, Maryland. In 2001, Redwood Trust bought the building and renovated it. In November 2001, the building opened for business as a sushi bar/restaurant and night club offering alcoholic beverages and live and recorded music.[1]

The building, as renovated, has three levels: a basement and a first and second level. The basement level, which was formerly the bank vault, is roughly 6,500 square feet and consists of lounge space, a dance floor, and storage. At times, the basement level has its own music and entertainment separate from the first and second levels. At other times, the music played in the basement is the same as that played on the first and second levels.

The first level is located on the ground floor and is roughly 6,400 square feet. It contains the sushi bar/restaurant, separate bars for pur-

---

[1]Plaintiff's attorney advises that after the case was filed, the sushi bar, called Sushi-San, was converted to a restaurant called Red Tapas. At oral argument, counsel for Redwood Trust informed us that Redwood Trust has ceased operating the business entirely and that the building is currently closed. It is unclear whether the business will be reopened in the future.

chasing alcoholic beverages, lounge space and a dance floor. The entrances to the building are located on the first level.

The second level is roughly 5,100 square feet and has a large opening in the center that provides a view of the dance floor on the first level below. The opening is rectangular, and its width is about 45% of the width of the building. There is a lounge area on either side of the large opening, and the width of each lounge is about 27% of the width of the building. The lounge areas are connected to each other by a walkway at one end and a bar at the other. The second level also has a disc jockey booth, a bar, and the owner's office. Patrons on the first and second levels listen to the same live or recorded music. There are no other floor levels above the second level.

Carolee Laird suffers from spina bifida. On December 15, 2001, she visited the Redwood Trust building. She could not access the basement or second level because the building does not have an elevator. On February 13, 2002, Miss Laird brought suit against Redwood Trust in the United States District Court for the District of Maryland alleging violations of the ADA. She argued that the ADA required Redwood Trust to install an elevator in the building. The district court granted summary judgment for Redwood Trust, holding that Redwood Trust was exempt from the requirement of installing an elevator because the building was fewer than three stories. Miss Laird appealed.

II.

We review the district court's grant of summary judgment *de novo*. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 766 (4th Cir. 2003). Summary judgment is appropriate when the "pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). There is no genuine issue for trial if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Americans with Disabilities Act prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). The ADA defines discrimination with respect to renovations of a place of public accommodation as the failure to "make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 42 U.S.C. § 12183(a)(2). Redwood Trust concedes that Laird is a qualified person with a disability, and that the building is a recently renovated place of public accommodation.

The ADA provides a specific exemption from the requirement to make a place of public accommodation readily accessible to all disabled individuals. The exemption provides:

> (b) Elevator
>
> Subsection (a) of this section shall not be construed to require the installation of an elevator for facilities that are less than three stories or have less than 3,000 square feet per story unless the building is a shopping center, a shopping mall, or the professional office of a health care provider or unless the Attorney General determines that a particular category of such facilities requires the installation of elevators based on the usage of such facilities.

42 U.S.C. § 12183(b). The statute does not define "story." However, the statute requires the Attorney General to issue regulations to implement its provisions, including defining terms used in the statute, and we look to those regulations where the statute is silent. See *Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581, 591 & n.5 (1999); 42 U.S.C. § 12186(b) (1995). In response to the requirements of 42 U.S.C. § 12186(b), the Attorney General released the ADA Accessibility Guidelines for Buildings and Facilities. 28 C.F.R. pt. 36, app. A (2002). The guidelines define the term "story" as follows:

> That portion of a building included between the upper surface of a floor and upper surface of the floor or roof next

above. If such a portion of a building does not include occupiable space, it is not considered a story for purposes of these guidelines. There may be more than one floor level within a story as in the case of a mezzanine or mezzanines.

28 C.F.R. pt. 36, app. A § 3.5 (2002). The term "mezzanine" is defined as

[t]hat portion of a story which is an intermediate floor level placed within the story and having occupiable space above and below its floor.

28 C.F.R. pt. 36, app. A § 3.5.

The district court held that the definition of mezzanine "is imprecise and consequently difficult to apply to the facts of this case." *Laird v. Redwood Trust LLC*, 240 F. Supp. 2d 423, 425 (D. Md. 2003). The district court therefore looked beyond the plain language of the statute and interpreted the regulations using a "pragmatic examination of the floor's functional space and the services provided on the floor." *Laird*, 240 F. Supp. 2d at 425.[2] Although we agree with the district court's result, our reasoning is somewhat different. We construe the language in the statute and the regulatory guidelines to describe the second level as a mezzanine, and thus not a third story.

Webster's Dictionary defines "portion" as "an often limited part set off or abstracted from a whole." *Webster's Ninth New Collegiate Dictionary* 916 (1985). "Intermediate" is defined as "being or occurring at the middle place, stage or degree or between extremes." *Webster's Ninth New Collegiate Dictionary* 632. Thus, by defining a mezzanine as "[t]hat *portion* of a story which is an *intermediate* floor level," the guidelines distinguish a mezzanine from an ordinary floor level in two ways. 28 C.F.R. pt. 36, app. A § 3.5. (emphasis added). First, a mezzanine must be less than a story, as it is only a "portion" of one. Second, a mezzanine must exist in the "middle place" or "between extremes" of a story because it is an "intermediate level."

---

[2]The plaintiff, br. at p.18, agrees with the district court that the regulations are imprecise, but comes to the opposite conclusion.

The definition also provides that a mezzanine must have "occupiable space above and below its floor." 28 C.F.R. pt. 36, app. A § 3.5. The word "floor" in this context refers to the physical barrier separating space between floor levels. The guidelines define a story as "[t]hat portion of a building included between the upper surface of a floor and upper surface of the floor or roof next above." 28 C.F.R. pt. 36, app. A § 3.5. When distinguishing a mezzanine from a separate story, however, the guidelines state that "[t]here may be more than one *floor level* within a story as in the case of a mezzanine or mezzanines." 28 C.F.R. pt. 36, app. A § 3.5 (emphasis added). A "floor" therefore is a physical separation of space, which contains an "upper surface." A floor level, by contrast, refers not only to the physical barrier between levels, but also to the occupiable space above the upper surface of that barrier. Thus, the bottom floor level of a building could not be a mezzanine because there is no occupiable space below its floor. However, the second level of a building, where there is occupiable space both below the floor's lower surface (the ceiling) and above its upper surface, satisfies the guidelines requirement.

Applying these definitions to the facts in this case, we are of opinion that the second floor level of the Redwood Trust building meets the definition of a mezzanine under the ADA Accessibility Guidelines. First, the second level is less than a story by itself, because it has occupiable space only in the limited area around the large opening that allows patrons to view the dance floor below. Second, the level is an "intermediate floor level" within a story because it is located between the first floor and the roof of the building. 28 C.F.R. pt. 36, app. A § 3.5. Finally, the second floor meets the literal regulatory definition of "mezzanine" by having "occupiable space above and below its floor" because there is occupiable space both on the first level below and on the second floor level itself. 28 C.F.R. pt. 36, app. A § 3.5. Therefore, we are of opinion and hold that the second level is a mezzanine within the meaning of the ADA Accessibility Guidelines and summary judgment for Redwood Trust was appropriate.

Laird also argues that Redwood Trust must provide elevator or lift access to the second floor under the ADA Accessibility Guidelines applicable to restaurants and cafeterias.[3] 28 C.F.R. pt. 36, app. A

---

[3]Although Laird does not address the conflict between the requirements of guidelines § 5.4 relating to restaurants and cafeterias and the

§ 5.4. Section 5.4 provides that "[i]n new construction, all dining areas . . . shall be accessible." 28 C.F.R. pt. 36, app. A § 5.4. However, "[i]n alterations, accessibility to . . . dining areas . . . is not required provided that the same services and decor are provided in an accessible space usable by the general public and are not restricted to use by people with disabilities." 28 C.F.R. pt. 36, app. A § 5.4. The term "alteration" is defined as "a change to a building . . . [including] remodeling, renovation, rehabilitation, reconstruction, historical restoration, changes or rearrangement of the structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions." 28 C.F.R. pt. 36, app. A § 3.5. Though Redwood Trust concedes that the renovations to the building were extensive, they are, nonetheless, renovations. There is no evidence in the record of any new construction; all of the renovations involved changes to the existing structure to allow it to function as a restaurant and night club. We are of opinion that the lengthy set of terms defining alteration were intended to cover renovations, like those to the Redwood Trust building, that are extensive but did not involve new construction. See 28 C.F.R. pt. 36, app.A, § 3.5 Accordingly, we find that the renovations to the Redwood Trust building were "alterations" under guideline §§ 3.5 and 5.4. We also find that the record shows no difference in the services or decor between the first and second floor dining areas. Therefore, we find that the district court's grant of summary judgment was proper.[4]

---

elevator exemption contained in 42 U.S.C. § 12183(b), we assume Laird is arguing the exemption does not apply because § 5.4 falls within the final clause of the statute. That clause provides that an elevator is required in buildings with less than three stories if "the Attorney General determines that a particular category of such facilities requires the installation of elevators based on the usage of such facilities." 42 U.S.C. § 12183(b). Presumably, Laird believes that the use of the unqualified phrase "all dining areas . . . shall be accessible" indicates that the Attorney General intended to require the installation of elevators in restaurants and cafeterias regardless of the number of stories. However, because Laird's claim under § 5.4 fails even if the final clause of 42 U.S.C. § 12183(b) applies, we decline to reach this issue.

[4]Laird's counsel conceded in oral argument that if the building falls under the "alteration" standards rather than the new construction standards, Laird's claim under guideline § 5.4 fails.

In sum, we are of opinion that the language of the ADA and the ADA Accessibility Guidelines is properly construed so that the Redwood Trust building has fewer than three stories because the second floor is a mezzanine. We also find that the building does not violate the ADA Accessibility Guidelines requirements for restaurants and cafeterias. Therefore, although we need not rely upon the district court's finding that the regulatory definitions are ambiguous, we agree that summary judgment was appropriate. See *SEC v. Chenery*, 318 U.S. 80, 88 (1943) (holding that a district court must be affirmed if the result is correct although we may rely upon a different reason)

Accordingly, the judgment of the district court is

*AFFIRMED*.

SHEDD, Circuit Judge, concurring:

I concur in the majority opinion but write separately to address the analysis of the dissenting opinion.* The dissent would rewrite an unambiguous Department of Justice (DOJ) regulation. Even more remarkably, the dissent would redraft this regulation by adding a specific provision that the DOJ clearly rejected.

The DOJ deliberately attempted to make its regulations consistent with model building codes whenever the dictates of the model codes were consistent with the purposes of the ADA. 56 Fed. Reg. 35,418 (July 26, 1991). Despite its specific knowledge of the model codes, the DOJ adopted a definition of "mezzanine" substantially different from that of the model codes. The DOJ regulation defines "mezzanine" as:

    That portion of a story which is an intermediate floor level

---

*The dissent faults the majority opinion for "avoid[ing] the difficult task of interpreting the parameters of a poorly drafted regulation." I do not believe that this court's duty is to explore the "parameters" of how the regulatory definition might be applied to all conceivable factual scenarios. Instead, this court must simply apply the regulatory definition to the facts of the concrete dispute in this particular case.

placed within the story and having occupiable space above and below its floor.

28 C.F.R. pt. 36, app. A § 3.5. The model codes, on the other hand, define "mezzanine" as:

An intermediate level or levels between the floor and ceiling of any story *with an aggregate floor area of not more than one-third of the area of the room or space in which the level or levels are located.*

INTERNATIONAL BUILDING CODE (2003), § 502.1 (emphasis added); BOCA NATIONAL BUILDING CODE, § 201 (1987) (similar language). Thus, the model codes contain an objective test under which a level cannot be deemed a mezzanine if it is larger than one-third of the area of the room in which it is located. The DOJ definition of "mezzanine" does not incorporate this bright-line test.

Although the DOJ did not adopt this objective test from the model codes in its definition, it employed an almost identical phrase in another portion of its ADA regulations governing new construction of dining areas. That regulation provides that an owner of a new building need not provide vertical access to a mezzanine if the "area of mezzanine seating measures no more than 33 percent of the area of the total accessible seating area." 28 C.F.R. pt. 36, app. A § 5.4. Thus, the DOJ obviously knew how to create a bright-line spatial test for determining issues of access but chose not to do so in its definition of "mezzanine."

Nevertheless, the dissent insists that this particular language in the model building codes creating the bright-line test — which the DOJ rejected — must be incorporated into the DOJ definition of "mezzanine" because the existing definition is a "virtual nullity" and does not "helpfully define" a mezzanine. I believe such a conclusion, especially under the facts of this case, is simply not correct. According to the DOJ definition, a mezzanine must be, among other things, "a portion of a story" and must be "placed within the story." That is, a mezzanine cannot be a free-standing story, but instead must be part of, and within, a larger story.

The dissent presumes that a floor, like one in a firehouse, with a hole cut out for a fire pole or a floor that has a drill hole is a mezzanine under the DOJ definition. The DOJ definition of "mezzanine" does not suggest such a conclusion. The floor that has a hole cut out for a fire pole — just as for a staircase — is a separate story. That floor is not a "portion of" the lower story, and neither is that floor "placed within" the lower story. Although the fire pole hole, like the staircase, connects the two floors, the two floors remain separate from each other. Further, the existing definition of "mezzanine" is sufficient to draw a distinction between a floor that has a hole drilled in it and the type of floor involved in this case — where the mezzanine is clearly a "portion of" and "placed within" the main story of the Redwood Trust building.

We are generally bound to construe a regulation according to the plain meaning of its unambiguous terms, and I concur with the majority because it faithfully does just that. The DOJ definition of "mezzanine" is not ambiguous, and based on the plain meaning of that definition the floor in question qualifies as a mezzanine. We are not free to write into the DOJ's definition what is not there, but instead we should apply the definition as written to the facts before us. *See Maryland State Dep't of Ed. v. United States Dep't of Veterans Affairs*, 98 F.3d 165, 169 (4th Cir. 1996) (giving effect to the plain meaning of a statute).

DUNCAN, Circuit Judge, dissenting:

Today the majority avoids the difficult task of interpreting the parameters of a poorly drafted regulation by interpreting it in a way that could not logically have been intended.[1] In doing so, the court disposes of the case before us, but creates a loophole in the ADA that could have serious consequences in the future. I therefore respectfully dissent.

---

[1]In his concurring opinion, Judge Shedd calls the regulation in question "unambiguous." Such an assertion, however, no matter how emphatic, does not make it so. I note that even the district court, whose conclusion Judge Shedd would uphold, does not share his assessment. *Laird v. Redwood Trust LLC*, 240 F. Supp. 2d 423, 425 (D. Md. 2003).

As an initial matter, I note that there is much in the majority's opinion with which I agree. We agree that the key issue in this case is whether the "elevator exemption" of 42 U.S.C. § 12183(b) applies to the Redwood Trust facility, specifically whether the second level of the facility is properly considered a "story" or a "mezzanine". We also agree that a correct starting point for this determination is the Department of Justice's ("DOJ") regulations defining these two terms. *See* 28 C.F.R. pt. 36, app. A § 3.5 (2002). Most significantly, we agree that the district court's "functional analysis", which distinguishes a "story" from a "mezzanine" based upon the functions or activities that take place within it, is impractical and incorrect. Such an approach would be virtually impossible to apply and has no basis in the regulations. However, I cannot agree with the majority that we should end our interpretation of the regulation with its "plain meaning" reading, when such a reading has the potential to undermine the purposes of the ADA.

As with the interpretation of statutes, our interpretation of regulations begins with their text. *See Maryland. St. Dep't of Educ. v. Dep't of Veterans Affairs*, 98 F.3d 165, 169-70 (4th Cir. 1996). In the overwhelming majority of cases, a textual reading will be dispositive. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989). However in a few cases, a literal reading of the regulations cannot be upheld, as it leads to an absurd result. In these limited instances, a court may adopt a more restrictive interpretation, so long as it is consistent with the purposes of the regulation and its governing statute. *United States v. Boynton*, 63 F.3d 337, 344 (4th Cir. 1995).

In the DOJ's regulations, a mezzanine is defined as "[t]hat portion of a story which is an intermediate floor level placed within the story and having occupiable space above and below its floor." 28 C.F.R. pt. 36, app. A § 3.5 (2002). The majority holds that a floor level is a "portion of a story" if there is some open space on that floor level, regardless of the amount, that makes it have less floor space than a story by itself. Under this interpretation, it determines that the opening in the center of the floor at Redwood Trust, through which the dance floor below can be viewed, causes it to qualify as a mezzanine. Maj. Op. 6. There is superficial appeal to this analysis. It seems straightforward, tracks the language of the regulation, and easily disposes of this case. However, in my opinion, the unavoidable negative

ramifications of such an interpretation on the broader scheme of the ADA make such a reading untenable.

According to the majority's interpretation, a floor level is a "portion of a story" so long as there is some open space on that floor level that causes it to have less total floor space than a story by itself. The majority reads the regulation as having no spatial limitation, thus making any floor level that happens to have some degree of open space, or in other words, a hole, a candidate for classification as a "mezzanine." Under this analysis, the opening surrounding a fireman's pole would give the second floor of a fire station less total floor space than the story below, thus converting it into a mezzanine. A ground floor-to-roof atrium in a ten-floor building creates an open space, turning a ten story building into a single story with nine mezzanines. Any floor that happens to have some opening that looks down upon the level below it, could be determined to be a "portion of a story" that has "occupiable space above and below its floor", thus making it a mezzanine, and consequently exempt from the requirements of the ADA. The majority's interpretation contains no limitations; if followed to its logical conclusion, it renders the ADA's elevator requirement a virtual nullity for anyone with the foresight to purchase a drill.[2]

Perhaps the majority would not follow its line of reasoning to its logical end, and would hesitate to hold that a fire pole opening or a floor-to-roof atrium converts a story to be converted into a mezzanine. However it could not do so under its current interpretation of the

---

[2]Judge Shedd's concurring opinion suggests that the majority's interpretation of the DOJ definition of "mezzanine" does not require such conclusions. According to Judge Shedd, the level with a hole cut out for a fire pole or a staircase qualifies as a separate story because the floor is not a "portion of" the lower story, nor is it "placed within" the lower story. Conspicuously absent from his conclusory assertion, however, is any reasoning to support it. The regulation contains no spatial limitation that would prevent the DOJ from applying its definition to a level with a fire pole hole or staircase and claiming that such a floor is a "portion of" and "placed within" a lower story. Judge Shedd's conclusion that such floors are separate stories simply because he says they are, offers little comfort to the disabled, and certitude strikes me as an inadequate substitute for analysis.

regulation. It is not enough for the majority to say that such an extreme example is not before us when there is no basis for any distinction under the interpretation it adopts.

While recognizing that the majority's interpretation is grounded in the text of the regulation, I cannot believe that such a result was intended. It creates a loophole that could swallow the rule and ultimately stymie the purpose of the ADA — to integrate individuals with disabilities into mainstream life by guaranteeing them reasonable access to places of public accommodation. *cf.* 42 U.S.C. § 12101; *P.G.A. Tour, Inc. v Martin*, 532 U.S. 661, 675 (2001). Because of this, I believe the interpretation is unsustainable. *See In re Vial*, 115 F.3d 1192, 1196 (4th Cir. 1997) (en banc). Therefore, the question arises as to what interpretation that is faithful to the regulations should replace it.

The district court, recognizing that the DOJ's definition of mezzanine was "imprecise and consequently difficult to apply", attempted to create a new "pragmatic" approach based upon the floor's available space and the services provided upon it. *Laird v. Redwood Trust LLC*, 240 F. Supp. 2d 423, 425 (D. Md. 2003). Using this test, the court found that because of the second floor's "limited functional space" and the fact that the Club did not play different music on the second floor, thus offering no "unique services" on it, the second level could properly be characterized as a mezzanine. *Id.* While I applaud the district court's efforts to grapple with a poorly drafted regulation, its proposed solution creates more problems than it solves. Primarily, the court never defines "functional space," leaving it as an ambiguous concept that finds no justification in the regulations and is extremely difficult to apply. The court concludes that one-third of the space on the second floor was not "functional," because it was used for an office, two bathrooms, a bar, a storage room and two staircases. But it does so without explanation, and its logic is far from apparent.

And even if the concept of "functional space" could be defined, the question as to whether a floor provides "unique services" would cause a myriad of other problems. For example, the district court focuses on the fact that the seating arrangement on each floor is similar and that the music provided on each level is generally of the same type. I cannot believe that the Department of Justice truly intended the decision

as to whether an elevator must be put in a place of public accommodation to hinge on a federal judge's decision as to whether the rock music on a club's first floor and the rap music on its second were different enough to create a "unique" experience on each level. Further, both the function and usage of a club can easily change — certainly far more easily than that building's structure. Having the applicability of the mezzanine exemption follow the function and usage of the space would make ADA compliance unnecessarily expensive, uncertain, and susceptible to manipulation.

Since the majority's reading of the DOJ definition is without limitation and creates an untenable loophole in the ADA, and the district court's functional interpretation created to replace it is equally problematic, another interpretation of the regulations that is consistent with the goals of the ADA must be sought. In a different context, the Supreme Court has recently said that when a regulation does not "helpfully define" a term, courts may seek to find Congressional intent by looking at the common meaning of that term (in that case the common law definition). *See Clackama Gastroenterology Assoc., P.C. v. Wells*, 538 U.S. 440, 444 (2003).

Although there is no common law definition of "mezzanine", its definition in the model building codes has gained wide acceptance. Mezzanine is defined in the International Building Code ("IBC") and the Building Officials & Code Administrators International, Inc. ("BOCA") National Building Code as "[a]n intermediate level or levels between the floor and ceiling of any story with an aggregate floor area of not more than one-third of the area of the room in which the level or levels are located." IBC, 2003 ed. § 502; BOCA 1999 National Building Code § 502.0. This is the definition used by a large number of states in their building codes, and serves as the most common definition of mezzanine currently used. *See e.g.,* Cal. Health & Safety Code § 19995.3; 71 Ill. Adm. Code 400.210; Wis. Admin. Code § 51.02. The applicability of a one-third limitation to the regulation before us has appeal. It creates an objective criterion that is easily applied, familiar to the construction industry, and unlike the majority's reading, furthers the ADA goal of facilitating access.

Such an application is, however, not without its problems. DOJ included the one-third limitation in another part of its regulations

dealing with mezzanines, thus acknowledging its familiarity with the standard. Despite that awareness, it declined to include the phrase within the definitions at issue. *See* C.F.R. § 36, App. A., 5.4 (vertical access to the mezzanine is not required if the area is "no more than 33 percent of the [total] area"). Thus one might argue that the *expressio unius est exclusio alterius* ("the expression of one thing is the exclusion of another") maxim should apply, reading the lack of incorporation of the one-third standard in the mezzanine definition as being intentional. However as courts have recognized, the *expressio* maxim, while a helpful tool for statutory construction, can often be misleading. *United States Immigration & Naturalization Serv. v. Fed. Labor Relations Auth.*, 4 F.3d 268, 272 (4th Cir. 1993). Its purpose, or that of any other principle of statutory construction, is simply to serve as a guide to ascertaining legislative or regulatory intent. If applying the maxim in a particular situation does not clarify the drafter's intent, then the maxim serves no purpose. As explained before, I do not believe that the DOJ intended to define "mezzanine" in such a way so as to create a large loophole in the statute. Applying the *expressio* maxim rigidly in this case, thus eliminating reference to the one-third limitation, would create such a loophole. A statutory maxim intended to help decipher drafter intent will expressly counter it, thus leaving us with the unfettered interpretation adopted by the majority and the potential for the goal of access to be unrealized.

Ultimately, as the district court implicitly and astutely recognized, the Justice Department needs to clarify its regulations. In the interim, however, I would rely on the one-third standard adopted by the building codes as an initial point of departure. As problematic as building codes may be, no other objective standard appears. And with one-third of a floor as the frame of reference for determining the existence of a mezzanine, it is not difficult to conclude that a level which is 75% of the floor space of the stories between which it falls, is too large. Indeed, it is disconcertingly close to my firepole/atrium analogies.

For the foregoing reasons, and with full understanding of the majority's decision to opt for its simpler reading, I respectfully dissent. In the long run, the goal of facilitation of access for the disabled demands it.